50 P.3d 443

**In re Board of County Commissioners of Cassia County Idaho Sitting as the Cassia County Planning and Zoning Commission—Resolution No. 98–12–1.**

**John EVANS and Jackson Allred, Appellants,**

v.

**BOARD OF COMMISSIONERS OF CASSIA COUNTY IDAHO, Respondent,**

and

**Larry R. Watterson, Intervenor–Respondent.**

**No. 25986.**

Supreme Court of Idaho, Twin Falls, March 2001 Term.

May 31, 2002.

Parsons, Smith & Stone, Burley; Marcus, Merrick, Montgomery, Christian & Hardee, LLP, Boise, for appellants. Randolph C. Stone argued.

Kerry D. McMurray, Burley, for respondent.

Jason D. Walker, Rupert, for intervenor-respondent.

SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED 1/17/02 IS HEREBY WITHDRAWN.

KIDWELL, Justice.

This appeal arises from the decision of the Board of County Commissioners of Cassia County, sitting as the Cassia County Planning and Zoning Commission (the Board), to grant a special use permit for the development of a gravel pit. The appellants, residents in an adjacent subdivision, argue that the Board erred and that the permit application was fatally flawed. The appellants bring this appeal following a decision by the district court affirming the Board. We affirm the decision of the Board.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Larry Watterson owns a tract of land of approximately forty-six-acres that is the subject of this appeal. Watterson purchased the property in 1975 and has historically used it for agricultural purposes. The property is located within an agricultural-residential zone, and contains high quality deposits of sand and gravel.

The property is located on Highway 27 in Cassia County, Idaho. To the north and to the east, the property is bordered by mostly agricultural property with some residential areas. On the immediate west side of the property there is more residential land, with more agricultural land farther to the west. The Third Lift Canal borders the property to the south, and an active gravel pit is situated beyond the canal. There are also several other active gravel pits in the near vicinity.

The "VIP Estates" is a residential subdivision sitting to the west of Watterson's property. The houses in the "VIP Estates" are described as $200,000 "luxury" homes. The appellants in this case, John Evans and Jackson Allred, own homes in the VIP Estates.

On October 5, 1998, Watterson filed an application for a special use permit, which would allow him to develop a gravel pit. A hearing was set for November 2, 1998, but was rescheduled for December 7, 1998, because of a defect in the notice requirements. On December 21, 1998, the Board granted Watterson a conditional special use permit. The permit contained approximately thirty-two specific conditions relating to the operation of the gravel pit.

On January 15, 1999, the appellants, along with two other homeowners, filed a petition for review with the district court, seeking to overturn the Board's decision. Following oral argument, the district court entered its decision on September 17, 1999, affirming the Board's decision to issue the special use permit. Specifically, the district court found that there was substantial evidence presented to the Board at the hearing. The district court also found that the Board had complied with its comprehensive plan in its decision to grant the special use permit. Finally, the district court determined that the Board's decision was based on sound evidence, and was not arbitrary, capricious, or an abuse of its discretion.

On October 29, 1999, appellants Evans and Allred filed a timely notice of appeal.

## II.

## STANDARD OF REVIEW

Local zoning decisions made under the Local Land Use Planning Act (LLUPA), I.C. §§ 67–6501–6538, are reviewed according to the judicial review provisions of the Idaho Administrative Procedures Act (IDAPA), I.C. §§ 67–5270–5279. I.C. § 67–6521(d); *Payette River Prop. Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 554, 976 P.2d 477, 480 (1999). "In a subsequent appeal from the district court's decision where the district court was acting in its appellate capacity under the IDAPA,

the Supreme Court reviews the agency record independently of the district court's decision." *Payette River Prop. Owners Ass'n,* 132 Idaho at 554, 976 P.2d at 480. This Court will not substitute its judgment for that of the zoning agency as to the weight of the evidence on questions of fact. I.C. § 67–5279(1); *Lamar Corp. v. City of Twin Falls,* 133 Idaho 36, 39, 981 P.2d 1146, 1149 (1999).

 Additionally, this Court will defer to the agency's findings of fact unless those findings are clearly erroneous and are unsupported by the record. *Lamar Corp.,* 133 Idaho at 39, 981 P.2d at 1149. There is a strong presumption of validity favoring the actions of the zoning agency when applying and interpreting its own ordinances. *Id.* The zoning agency's decision will be set aside only if it is: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67–5279(3)(a)–(e). Even if the agency erred in one of these ways, the party attacking the agency's decision must still show that a substantial right of that party has been prejudiced. *Payette River Prop. Owners Ass'n,* 132 Idaho at 554, 976 P.2d at 480.

## III.

## ANALYSIS

### A. The Board Did Not Err In Granting Watterson A Special Use Permit.

In their statement of issues presented on appeal, the appellants allege that the Board's decision to grant Watterson the special use permit violated subsections (a), (c), (d), and (e) of I.C. § 67–5279(3). Appellants' brief does not present argument or cite authority for the proposition that the Board's decision should be reversed as being arbitrary, capricious, or an abuse of discretion under subsection (e). Therefore, we will limit our review to subsections (a), (c), and (d).

### 1. The Board Did Not Violate Statutory Or Constitutional Provisions.

 In arguing that the Board violated statutory or constitutional provisions, the appellants point out the lack of specificity and detail contained in Watterson's application that was approved by the Board. Section 12–2 of the Cassia County Zoning Ordinance addresses the application requirements for a special use permit. It requires:

An application for [a] Special Use Permit shall be filed with the Administration by at least one (1) owner or lessee of property for which such special use is proposed. At a minimum, the application shall contain the following:

a. Name, address and phone number of applicant;

b. Legal description of property;

c. Description of existing use;

d. Zoning District;

e. Description of proposed special use;

f. A plan of the proposed site for the special use showing the location of all buildings, parking and loading area, traffic access and traffic circulation, open spaces, landscaping, refuse and service areas, utilities, signs, yards and such other information as the Commission may require to determine if the proposed special use meets the intent and requirements of this Ordinance.

g. A narrative statement evaluating the effects on adjoining property; the effect of such elements as noise, glare, odor, fumes and vibration on adjoining property; a discussion of the general compatibility with adjacent and other properties in the district; and the relationship of the proposed use to the Comprehensive plan.

h. A fee of $150.00.

In relation to subsection (g), which deals with the effects on adjoining property, Watterson provided the following information on the fill-in-the-blanks special use permit application:

We will excavate this 46 acres for the gravel, saving the top soil. After excavation is completed, the topsoil will be replaced & the 46 acres will be farmed.

As for the noise, it will not exceed the noise normal to this area. (farm equipment and the Highway Traffic of Hwy 27[) ]. Glare, odors, vectors, fumes, vibrations should not be a problem in a gravel pit.

■ Appellants argue that Watterson's description does not sufficiently satisfy the requirements of section 12–2. However, a local land use ordinance is not a "statutory provision" enacted by the legislature, the violation of which provides grounds for reversal under I.C. § 67–5279(3)(a). Nowhere in the LLUPA is "ordinance" or "rule" likened to or used synonymously with "statute." The judicial review sections of the IDAPA, incorporated by reference in the LLUPA, provide a review mechanism that differs from that which a court would employ in reviewing the interpretation and application of a statute. *See Lamar Corp.*, 133 Idaho at 39, 981 P.2d at 1149 (holding in part that there is a presumption of validity favoring the actions of a zoning agency when applying and interpreting its own ordinances); *Payette River Prop. Owners Ass'n*, 132 Idaho at 554, 976 P.2d at 480 (holding in part that, even if an agency erred under I.C. § 67–5279, the party attacking the agency's decision must still show that a substantial right of the party has been prejudiced). Thus, a local zoning agency's interpretation of its own ordinances, even if questionable, without more, does not necessarily amount to a violation of an Idaho statutory provision.

The appellants also argue that the information provided in the special use application, in relation to subsection 12–2(g) of the ordinance, failed to meet the requirements that adjoining land owners and the public be provided notice and an opportunity to present and rebut evidence, which requirements are found in I.C. § 67–6512 and I.C. § 67–6534. The appellants have not challenged the sufficiency of the information provided by Watterson in the application's section relating to section 12–2(f) of the ordinance. As for the challenged above-quoted narrative under section 12–2(g), Watterson gave a description of the general nature of the work to be completed and stated his belief that disturbance levels would not differ from those already existing in the area. The narrative statement under subsection (g), when combined with the information Watterson provided in the rest of the application, was adequate to give members of the public notice of the types of issues and evidence that were likely to arise at the hearing and the types of evidence they may have wished to present to rebut Watterson's claims. The appellants have not shown a violation of any statutory provision.

## 2. The Board's Action Did Not Constitute Unlawful Procedure.

■ The appellants next claim that the Board's actions at the hearings constituted unlawful procedure, because the Board failed to require strict compliance with the rules of evidence. Specifically, they claim that the Board erred in admitting exhibits without proper foundation, in considering testimony that was not based on oath or affirmation, and in allowing participants to "say anything they wanted, whenever they wanted."

The Board held two hearings on the matter, at which time it took comments from Watterson and invited comments from interested persons in the audience. There were several comments and questions from the audience, as well as a statement from the attorney for the appellants. Additionally, there were twenty-five exhibits submitted for the Board's consideration. This evidence, while perhaps not strictly complying with the rules of evidence, was nonetheless presented to the Board in a format in which the credibility of the witnesses and the evidence could be assessed firsthand. Moreover, it was the type of evidence commonly considered by local land use boards in making these decisions. It would not be feasible to require those conducting this type of hearing, who frequently are not trained in the law, to accept only that evidence which would be admissible in a court proceeding. Here, the Board properly considered substantial evidence and heard testimony of those individuals who had an interest in the proceedings.

■ The appellants further argue that the Board's visit to the proposed use site, without notice to or the presence of the interested parties, was a due process violation amounting to improper procedure. Due

process requirements apply to proceedings of local land use boards, including decisions on applications for conditional land use permits. *See Comer v. County of Twin Falls,* 130 Idaho 433, 438, 942 P.2d 557, 562 (1997), *Chambers v. Board of County Comm'rs,* 125 Idaho 115, 118, 867 P.2d 989, 992 (1994). In *Comer,* a board of county commissioners sitting in its appellate capacity reversed a county planning and zoning commission's denial of a conditional use permit. While considering the appeal from the commission, the board viewed the subject property without notice to the interested parties. 130 Idaho at 436, 942 P.2d at 560. The district court affirmed the decision of the board. *Id.* This Court first noted that due process requires a board, sitting in an appellate capacity, to confine itself to the record on appeal and that the board had failed to do so in that case. *Id.* at 439, 942 P.2d at 563 (citing *Chambers,* 125 Idaho at 118, 867 P.2d at 992). The Court ultimately held that the relevant due process violation was the board's failure to provide the parties with notice of and an opportunity to be present at the viewing of the subject property. *Id.* The Court vacated the decision of the board and remanded the case for further proceedings. *Id.*

While *Comer* and *Chambers* are still good law in this state, the spirit of their holdings is not implicated in this case. The record does not indicate that any factual disputes would be resolved by sending this case back to the Board for a decision to be made without the benefit of a viewing, or based upon a viewing at which interested parties are present. The Board was not acting upon a cold appellate record to make its decision, as was the case in *Comer;* rather, it was the original deciding body. There was substantial evidence presented at the hearing upon which the Board could have based its decision, wholly independently from the visit to the property. In our review of the proceedings, we are to "consider the proceedings as a whole and to evaluate the adequacy of procedures and resultant decisions in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision-making." I.C. § 67–6535. We find that whatever knowledge the Board may have gained from visiting the property was not necessary

to form the basis of its decision, as the hearing yielded substantially the same evidence as could have been garnered during the visit. Also, interested persons were provided a fair opportunity to present and rebut evidence at the hearing. Consequently, the appellants cannot show that a substantial right of theirs has been prejudiced by the Board's visit to the site.

**3. The Board's Decision Was Based On Substantial And Competent Evidence.**

 The appellants also charge that there was not substantial and competent evidence to support the Board's decision to grant the special use permit. To make its decision, the Board was required to consider the Zoning Ordinance and the objectives of the Comprehensive Plan. The "General Standards Applicable to All Special Uses," section 12–3 of the Cassia County Zoning Ordinance, provides:

The Commission shall review the particular facts and circumstances of each proposed special use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location:

a. Will in fact, constitute a special use as established on the Official Schedule of Zoning Regulations for the zone involved.

b. Will be harmonious with and in accordance with the general objectives or with any specific objective of the Comprehensive Plan and/or the Zoning Ordinance.

c. Will be designed, constructed, operated and maintained to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.

d. Will not be hazardous or disturbing to existing or future neighboring uses.

e. Will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse dis-

posal, water and sewer and schools; or that the persons or agencies responsible for the establishments of the proposed use shall be able to provide adequately any such services.

f. Will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community.

g. Will not involve uses, activities, processes, materials, equipment and conditions or operation that will be detrimental to any person, property or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare, pollution or odors.

h. Will have vehicular approaches to the property which shall be so designated as not to create an interference with traffic on surrounding public thoroughfares.

i. Will not result in the destruction, loss or damage of any natural, scenic or historic feature of major importance.

Subsection "b" directs the Board to consider whether the proposed use will be harmonious with and in accordance with the objectives of the Comprehensive Plan. The Comprehensive Plan provides:

### 12.0 SAND AND GRAVEL
### 12.1 GOAL

Utilize Cassia County's gravel resource while minimizing negative environmental impact and protecting wildlife habitat.

### 12.2 OBJECTIVES

12.2–1: Encourage gravel extraction and associated uses in areas that will have minimal adverse impact on surrounding uses.

12.2–2: Encourage rehabilitation of exhausted sites for reuse in accordance with adopted regulations and plans.

### 12.3 POLICIES

12.3–1: All applications for sand and gravel extraction permits and proceedings for both new and expanding sites shall be required to have a reclamation plan and program for the site.

12.3–2: Site reclamation plans shall be guaranteed by the applicant, shall be reviewed and approved by the governing authority prior to extraction and shall specify future uses to which land could be put.

12.3–3: Sand and gravel applications shall be reviewed on a case-by-case basis and may be approved, denied or modified under the following criteria;

a. Prime agricultural land should be avoided,

b. Should be located to avoid unreasonable impacts on surrounding uses from noise, transportation, dust and odors,

c. The integrity of the natural area should be protected with minimal disturbance of the riparian vegetation,

d. Sand and gravel hauling operations should avoid routes which adversely impact residential neighborhoods,

e. Operations should be designed and operated so as to avoid degradation of air and water resources,

f. Adverse visual impacts shall be mitigated through landscape buffering techniques,

g. Stockpiling and permanent structures shall not be located in the floodway,

h. Operations should not disrupt agricultural operations,

i. Local access roads utilized by the operation shall be capable of handling the heavy vehicular traffic generated by the site, and

j. Extraction should only be permitted in areas where it is documented that there are good sand and gravel resources.

Upon considering the Zoning Ordinance and, as directed by the Ordinance, upon considering the objectives of the Comprehensive Plan, the Board issued the special use permit for the gravel pit. The special use permit itself, however, is evidence that the Board balanced competing interests. The permit was issued with more than thirty specific conditions and limitations for the excavation and recapture of the property. The permit contains limitations and restrictions related to the Zoning Ordinance and the Comprehensive Plan. It also seems evident that the Board worked to fashion the permit around

the concerns of those who spoke at the hearing. For example, the permit discusses several limitations concerning dust, which may be created in the operation. Other limitations deal with noise, standing water, the storage of fuel, and limitations on the hours of operation.

Therefore, it is clear that the Board's decision to grant the special use permit subject to conditions and restrictions was supported by substantial and competent evidence. We affirm the Board's decision to grant Watterson the special use permit.

## B. Appellants Are Not Entitled To Attorney Fees On Appeal.

The appellants seek an award of attorney fees under I.C. § 12–117. That section provides, in part:

(1) Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

(2) If the prevailing party is awarded a partial judgment and the court finds the party against whom partial judgment is rendered acted without a reasonable basis in fact or law, the court shall allow the prevailing party's attorney's fees, witness fees and expenses in an amount which reflects the person's partial recovery.

I.C. § 12–117(1)(2).

In this case, the appellants failed to prove that the Board's decision should be overturned. Thus, the appellants are not the prevailing parties. Additionally, the appellants failed to prove that the Board's actions were "without a reasonable basis in fact or law." Therefore, appellants are not entitled to an award of attorney fees.

## IV.

## CONCLUSION

Appellants failed to prove that the Idaho Code prohibited the actions of the Board.

Consequently, this Court affirms the Board's decision to grant Watterson the special use permit. Because the appellants are not the prevailing party, they are not entitled to attorney fees. Costs are awarded to respondents.

Justices SCHROEDER, WALTERS, and EISMANN CONCUR.

Chief Justice TROUT CONCURS IN THE RESULT.