73 P.3d 84

Richard EVANS and Matthew Finnegan,
Plaintiffs–Appellants,

v.

TETON COUNTY, Idaho Board Of Commissioners, Teton Springs, L.L.C., Max H. Rammell and Denice K. Rammell, husband and wife, Merrill R. Rammell and Roberta L. Rammell, husband and wife, Miles E. and Jessie M. Hastings Family Trust, Kearsley Family L.L.C., and John H. Winger, Defendants–Respondents.

No. 27854.

Supreme Court of Idaho,
Boise, March 2003 Term.

June 3, 2003.

Rehearing Denied July 28, 2003.

Phyllis Lamken, Victor, argued for appellants.

Teton County Attorney, Driggs, for respondent Teton County. Laura Lowery argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for respondent Teton Springs, L.L.C. Dale Storer argued.

Roy Moulton, Driggs, for respondents Rammell, et al.

KIDWELL, Justice.

Richard Evans and Matthew Finnegan (appellants) appeal the Teton County Board of County Commissioners' (Board of Commissioners) decision to approve Teton Springs, L.L.C.'s (Teton Springs) final plat of phase 1 of the Teton Springs subdivision, request for a zone change from A–2.5 to R–1, and application for a Planned Unit Development (PUD). The Board of Commissioners' decision is affirmed.

## I.

## FACTS AND PROCEDURE

Teton Springs, a Wyoming limited liability company authorized to do business in the state of Idaho, proposed to convert 780 acres of mostly undeveloped farmland and wetland in southern Teton County into a PUD consisting of a golf course and residential resort. The PUD is adjacent to the Targhee National Forest in southern Teton County, south of Victor, Idaho. Upon completion, the proposed development will include an 18–hole golf course, clubhouse, pro shop, maintenance buildings, fishing ponds, equestrian facility, 100–room hotel, 50 overnight units, health club and tennis facility, swimming pool, restaurant, conference rooms, nordic ski facility, storage facilities, helicopter pad, parking lots, 18 two to three acre ranch estates, 100 three-quarters to one acre golf estates, 170 one-third to one-half acre golf homes, 180 five thousand square foot residential lots, and 100 overnight cabin lots from one thousand to twenty-five hundred square feet.

Of the 780 acres upon which the PUD will be built, the respondents Rammel own 460 acres, the Hastings own 160 acres, the Kearsleys own 80 acres, and the Wingers own 80 acres. Approximately 140 of the 780 acres are located within the "Area of City Impact," an unincorporated area of Teton County neighboring the city of Victor. In addition to the national forest to the south, the acreage surrounding the PUD supports a mix of agricultural, residential, and commercial uses. There are some pre-existing subdivisions to the north of the PUD. The appellants live on two-and-one-half acre residential lots near the PUD.

On August 2, 1999, Teton Springs filed an application for approval of the PUD. Teton Springs also requested a zone change from A–2.5 to R–1. On September 1, 1999, the Teton County Planning and Zoning Commission (Zoning Commission) held a public hearing to consider the application. Following the hearing, the Zoning Commission recommended approval of the concept plan for the PUD and zone change. On October 25, 1999,

the Board of Commissioners conducted a public hearing to consider the Teton Springs PUD and proposed zone change. At the conclusion of the hearing, the Board of Commissioners approved the concept plan of the PUD conditionally upon resolution of issues regarding natural stream flows, the development's impact on the city of Victor, traffic flow, impact on county services, sewer system capacity, and density. The Board of Commissioners decided to wait to consider the zoning change when it considered Teton Springs' final plat.

After the October hearing, the Zoning Commission obtained comments regarding the PUD application from the Idaho Department of Water Resources, the U.S. Environmental Protection Agency, the Idaho Department of Environmental Quality, the U.S. Fish and Wildlife Service, the Idaho Fish and Game Department, the District 7 Health Department, and various other county and local agencies. On May 3, 2000, the Zoning Commission held another public hearing to consider the Teton Springs PUD application and the proposed zone change. At the hearing's conclusion, the Zoning Commission recommended accepting the PUD application and granting the zone change. On May 9, 2000, the Zoning Commission issued Findings of Fact and Conclusions in support of its decision.

On June 12, 2000, the Board of Commissioners and the city of Victor held a joint public hearing to consider the Teton Springs PUD and request for a zone change. At the conclusion of this hearing, the Board of Commissioners and the city of Victor approved the PUD and granted the zone change. The Board of Commissioners also adopted the Findings of Fact and Conclusions issued by the Zoning Commission.

On July 7, 2000, the appellants filed a Petition for Judicial Review of Teton Springs' application for approval of a PUD and zone change. The appellants alleged the Board of Commissioners violated Teton County Zoning Ordinance (Zoning Ordinance), Teton County Subdivision Ordinance (Subdivision Ordinance), and the Teton County Comprehensive Plan (Comprehensive Plan) by approving the PUD and granting a zone change. As a result, the appellants alleged they would suffer substantial injury. On September 25, 2001, the district court issued a decision affirming the Board of Commissioners' approval of Teton Springs' application for a PUD and zone change. The appellants timely filed this appeal.

## II.

### STANDARD OF REVIEW

The Local Land Use Planning Act (LLUPA) allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedural Act (IDAPA). Idaho Code § 67–6521(1)(d) (2002); *Evans v. Bd. Of Comm'rs of Cassia County,* 137 Idaho 428, 430, 50 P.3d 443, 445 (2002). The district court conducts judicial review of the actions of local government agencies. I.R.C.P. 84(a)(1) (2002). For purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a government agency under IDAPA. *Urrutia v. Blaine County,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000). The district court bases its judicial review on the record created before the local government agency. I.R.C.P. 84(e)(1). This Court reviews decisions under the IDAPA independently of any intermediate appellate court. *Evans,* 137 Idaho at 431, 50 P.3d at 446.

This Court must affirm the Board of Commissioners unless it determines the Board of Commissioners' findings, inferences, conclusions, or decisions: (1) violated the constitution or statutory provisions; (2) exceeded its statutory authority; (3) were made upon unlawful procedure; (4) were not supported by substantial evidence on the record; or (5) were arbitrary, capricious, or an abuse of discretion. *Id.;* I.C. § 67–5279(3). There is a strong presumption that the actions of the Board of Commissioners, where it has interpreted and applied its own zoning ordinances, are valid. *Evans,* 137 Idaho at 431, 50 P.3d at 446. The party appealing the Board of Commissioners' decision must first show the Board of Commissioners erred in a manner specified under I.C. § 67–5279(3),

and second, that a substantial right has been prejudiced. I.C. § 67–5279(4); *Price v. Payette County Bd. Of Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998).

Whether the Board of Commissioners violated a statutory provision is a matter of law over which this Court exercises free review. *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 196, 46 P.3d 9, 13 (2002); *Polk v. Larrabee*, 135 Idaho 303, 308, 17 P.3d 247, 252 (2000).

This Court defers to the Board of Commissioners' findings of fact unless the findings of fact are clearly erroneous. *Evans*, 137 Idaho at 431, 50 P.3d at 446; *Friends of Farm to Market*, 137 Idaho at 196, 46 P.3d at 13. The Board of Commissioners' factual findings are not clearly erroneous so long as they are supported by substantial, competent, although conflicting, evidence. *Friends of Farm to Market*, 137 Idaho at 196, 46 P.3d at 13.

### III.

### ANALYSIS

### A. Appellants Have Standing To Challenge The Board of Commissioners' Decision to Approve Teton Springs' Application And Request For A Zone Change.

Teton Springs argues the appellants lack standing because they are not "affected persons" under I.C. § 67–6521(d). For this proposition, Teton Springs cites *Rural Kootenai Organization, Inc. v. Board. of Commissioners*, 133 Idaho 833, 993 P.2d 596 (1999), where this Court ruled members of RKO lacked standing to raise a due process claim without demonstration of a distinct, palpable injury and a causal connection between the injury and lack of notice. Teton Springs also relies on I.C. § 67–6535(c), which requires "actual harm or a violation of fundamental rights" to obtain a remedy under LLUPA. The appellants counter that they have standing to appeal the Board of Commissioners' decision to approve the PUD and zone change because they own land within 300 feet of the PUD and will be adversely affected by its construction.

LLUPA confers standing to seek judicial review of a local land use decision to an "affected person" aggrieved by the decision. I.C. § 67–6521(d). This Court notes that while it recognizes the underlying policy of I.C. § 67–6521(d) conferring standing to affected persons, the legislature cannot, by statute, relieve a party from meeting the fundamental constitutional requirements for standing. *See Noh v. Cenarrusa*, 137 Idaho 798, 53 P.3d 1217 (2002). An affected person is "one having an interest in real property which may be *adversely affected* by the issuance or denial of a permit authorizing the development." I.C. § 67–6521(a) (emphasis added).

The appellants emphasize they own land within 300 feet of the PUD. The record shows the appellants received notice of a hearing, presumably pursuant to the Subdivision Ordinance and Idaho Code, which require notice to all landowners within 300 feet of a proposed variance or amendment to a zoning district. However, the notice sent to the appellants stated they received it because they owned land *either* within 300 feet of the PUD or in the Pole Canyon Ranches Subdivision, a development adjacent to the proposed PUD. The Subdivision Ordinance and Idaho Code arbitrarily designate 300 feet. The appellants standing status depends on whether they own property that may be adversely affected by the PUD's construction, not because they can claim they own property within a specified distance. Proximity is a very important factor. A property owner in Tetonia, Driggs, or even Victor may be less likely to qualify for standing to challenge the PUD because it is less likely they can show their property will be adversely affected. However, this Court will not look to a predetermined distance in deciding whether a property owner has, or does not have, standing to seek judicial review of a LLUPA decision.

Clearly, the appellants' properties may be adversely affected by a development proposing an 18–hole golf course and pro shop, nearly five hundred homes, a helicopter pad, a 100–room inn, and 50 overnight cabins all on property adjacent to their rural homes. The appellants have standing to seek judicial review of the Board of Commissioners' deci-

sion to approve Teton Spring's PUD application and request for a zone change because they may be adversely affected by the decision.

Teton Springs' reliance on *Rural Kootenai Organization* for the proposition the appellants lack standing is misplaced. The standing analysis in that case was relevant only to the narrow issue of whether RKO had standing to raise a due process claim relating to notice of two specific public hearings. The standing analysis did not extend to any other issue raised by RKO.

Teton Springs' reliance on the language of I.C. § 67–6535 to argue the appellants lack standing is equally misplaced. I.C. § 67–6535(a) requires that approval or denial of any application provided for in LLUPA be based on criteria set forth in the local zoning ordinances and comprehensive plan. I.C. § 67–6535(c) directs the review of a LLUPA decision. The language in I.C. § 67–6535(c) instructing courts that "[o]nly those whose challenge to a decision demonstrates actual harm or violation of fundamental rights, not the mere possibility thereof, shall be entitled to a remedy or reversal of a decision" cannot be construed as a standing requirement. The existence of real or potential harm is sufficient to challenge a land use decision. I.C. § 67–6535(c) requires a demonstration of actual harm or violation of a fundamental right in order to be entitled to a remedy in cases disputing a LLUPA decision.

**B. The Board of Commissioners Did Not Violate The Teton County Comprehensive Plan When It Granted A Zone Change From A–2.5 to R–1.**

The appellants argue the change in zoning from A–2.5 to R–1 is inconsistent with the permitted use in the rest of the zoning district and violates the Comprehensive Plan. As a result, the appellants argue the zone change is spot zoning, which is impermissible.

■ A county board of commissioners must establish one or more zones or zoning districts within the county. I.C. § 67–6511. The zoning districts shall be "in accordance with" the policies of the County's comprehen-

sive plan. *Id.* Rezoning property requires an amendment to the zoning ordinance. After considering the comprehensive plan, the planning and zoning commission may recommend, and the board of commissioners may accept or deny, an amendment to the zoning ordinance. I.C. § 67–6511(b); *Bone v. City of Lewiston,* 107 Idaho 844, 849, 693 P.2d 1046, 1052 (1984). A comprehensive plan is not a legally controlling zoning law, it serves as a guide to local government agencies charged with making zoning decisions. *Bone* at 850, 693 P.2d at 1052; *Friends of Farm to Market,* 137 Idaho at 200, 46 P.3d at 17; *Urrutia,* 134 Idaho at 357–58, 2 P.3d at 742–43. The "in accordance with" language of I.C. § 67–6511 does not require zoning decisions to strictly conform to the land use designations of the comprehensive plan. *Bone* at 850, 693 P.2d at 1052; *Sprenger, Grubb, & Assoc., Inc. v. City of Hailey,* 127 Idaho 576, 585, 903 P.2d 741, 750 (1995); *See Also* I.C. § 67–6508. However, a board of commissioners cannot ignore their comprehensive plan when adopting or amending zoning ordinances. *Bone* at 850, 693 P.2d at 1052. Whether approval of a zone change is "in accordance with" the comprehensive plan is a question of fact, which can only be overturned when the factual findings supporting the zone change are clearly erroneous. *Id.; Friends of Farm to Market,* 137 Idaho at 200, 46 P.3d at 17; *Sprenger, Grubb, & Assoc., Inc.,* 127 Idaho at 585, 903 P.2d at 750; *Ferguson v. Bd. Of County Comm'rs for Ada County,* 110 Idaho 785, 787, 718 P.2d 1223,1225 (1986). The governing body charged with making zoning decisions "in accordance with" the comprehensive plan must "make a factual inquiry into whether requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual circumstances surrounding the request." *Bone* at 850, 693 P.2d at 1052.

■ A claim of "spot zoning" is essentially an argument the change in zoning is not in accord with the comprehensive plan. *See Price,* 131 Idaho at 432, 958 P.2d at 589. There are two types of "spot zoning." *Dawson Enter., Inc. v. Blaine County,* 98 Idaho 506, 514, 567 P.2d 1257, 1265 (1977). Type

one spot zoning may simply refer to a rezoning of property for a use prohibited by the original zoning classification. *Id.* The test for whether such a zone reclassification is valid is whether the zone change is in accord with the comprehensive plan. *Id.* Type two spot zoning refers to a zone change that singles out a parcel of land for use inconsistent with the permitted use in the rest of the zoning district for the benefit of an individual property owner. *Id.* at 515, 567 P.2d at 1266. This latter type of spot zoning is invalid. *Id.*

■ The record reflects that the Board of Commissioners approved the PUD application and zone change conditionally upon the input it requested, and received, from several local, state, and federal agencies regarding the PUD's impact on water quality, wildlife habitat, riparian systems, traffic, public utilities, schools, health care providers, wastewater management, and many other topics. This input addressed many of the policies of the Comprehensive Plan, including public services and utilities, open spaces, and use and preservation of natural resources. Teton Springs also provided reports based on studies conducted by its own engineers and planners answering the concerns raised by the agencies and the public in general. The record also contains a fiscal impact report provided by a consulting firm hired by Teton Springs. The report concludes that the PUD will be advantageous for county revenues, another policy of the Comprehensive Plan. The record indicates throughout this process Teton Springs adjusted its application in order to meet the requirements demanded by the Zoning Commission.

■ The record also contains numerous objections to the PUD. One in particular, from a professional Hydrologist, outlines valid questions regarding the impact of the PUD on ground and surface water systems. However, many of the other objections were based on personal opinion and emotion rather than on the Comprehensive Plan and violations of its many policies. This Court must affirm the findings of the Board of Commissioners where, as here, if they are supported by substantial, competent, although conflicting, evidence. *Friends of Farm to Market,* 137 Idaho at 196, 46 P.3d at 13. Since the Board of Commissioners' finding that the zone change is in accord with the comprehensive plan is supported by substantial, competent evidence. The appellants' claim of spot zoning need not be addressed because the type one "spot zoning" in this case is valid.

## C. The Board of Commissioners Did Not Violate The Teton County Zoning And Subdivision Ordinance Or Comprehensive Plan When It Approved Teton Spring's Application For A PUD.

### 1. The Subdivision Ordinance's two percent limitation on developed acreage that can be used for incidental purposes does not apply to the Teton Springs PUD.

■ This Court construes a local ordinance as it construes a statute. *Friends of Farm to Market,* 137 Idaho at 196, 46 P.3d at 13. Statutory construction always begins with the literal language of the statute or ordinance. *Id.* at 197, 46 P.3d at 14. If an ordinance is unambiguous, this Court need not consider rules of statutory construction and the statute will be given its plain meaning. *Hamilton ex rel. Hamilton v. Reeder Flying Serv.,* 135 Idaho 568, 572, 21 P.3d 890, 894 (2001); *Canal/Norcrest/Columbus Action Comm. v. City of Boise,* 136 Idaho 666, 670, 39 P.3d 606, 610 (2001).

■ Where the language of a statute is ambiguous, this Court applies rules of construction for guidance. *Friends of Farm to Market,* 137 Idaho at 197, 46 P.3d at 14. This Court disfavors constructions that lead to absurd or unreasonably harsh results. *Id.* All sections of the applicable statute must be construed together to determine the legislative body's intent. *Id.* (citing *Lockhart v. Dept. of Fish and Game,* 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992)). Statutes and ordinances must be construed so as to give effect to all their provisions and not to render any part superfluous or insignificant. *Id.* (citing *Brown v. Caldwell Sch. Dist. No. 132,* 127 Idaho 112, 117, 898 P.2d 43, 48 (1995)). There is a presumption that a local zoning board's actions are valid when interpreting

and applying its own zoning ordinances. *Id.; Evans,* 137 Idaho at 431, 50 P.3d at 446.

■ The Subdivision Ordinance allows all PUDs to contain "incidental components" inconsistent with the underlying land use zones as long as: (1) the uses are incidental and necessary to the primary purpose of the PUD; and (2) no more than two percent of the developed acreage within the PUD is devoted to incidental use. Teton County, Idaho, Subdivision Ordinance § 1–7–5 (1999). The appellants argue the PUD violates the Subdivision Ordinance's two percent limitation on land developed for uses incompatible with the underlying zoning because the PUD's proposed commercial uses are incidental, not primary uses. As a result, the appellants claim many of the uses proposed by Teton Springs are prohibited in a residential zone.

. The Subdivision Ordinance permits three types of PUDs, including RCI PUDs. T.C.S.O. § 1–7–1. The Subdivision Ordinance defines an RCI PUD as one where "[p]roperty located in *residential,* commercial, *and* industrial zones may be developed pursuant to an approved" residential, commercial, *or* industrial (RCI) PUD. T.C.S.O. Art. II (emphasis added). In terms of the permitted uses in an R–1 zone, the Subdivision Ordinance states, "[p]roperty located within an R–1 ... zone may be developed pursuant to an approved 'Residential, Commercial or Industrial PUD' (referred to as an 'RCI PUD')." *Id.* Under the Subdivision Ordinance, all PUD's may be used for primarily residential developments, but only an RCI PUD may be used for primarily commercial or industrial developments. T.C.S.O. § 1–7–4. Under the Zoning Restrictions and Land Use Table found in the Zoning Ordinance, an RCI PUD is a permitted use in R–1 zones as long as the use is permitted as outlined in the PUD Process of the Zoning Ordinance. Teton County, Idaho, Zoning Ordinance § 1–4–1 (1999).

The Teton Springs PUD is an RCI PUD. The Zoning Ordinance unambiguously permits use of an RCI PUD in an R–1 Zone as long as the use is permitted as outlined in the PUD process. The Subdivision Ordinance unambiguously allows development of property located within an R–1 zone pursuant to an approved RCI PUD. The Subdivision Ordinance also unambiguously allows commercial or industrial development in an approved RCI PUD. Based on the plain meaning of the Zoning and Subdivision Ordinance, the two percent incidental use limitation of § 1–7–5 of the Subdivision Ordinance does not apply to an approved RCI PUD built in an R–1 zone as long as the use is permitted as outlined in the PUD process.

## 2. The density of the Teton Springs PUD is not impermissible.

■ The appellants claim the PUD violates the Comprehensive Plan because the density of development is too high and many of the lots are smaller than allowed. Under the Subdivision Ordinance, "A PUD application may depart from applicable height, setback and lot size restrictions when ... approved by the Board." T.C.S.O. § 1–7–3. "Any departures from the height, setback, and lot size ... [required by] the Zoning Ordinance must be recorded and justified as not compromising the health, safety and general welfare of the county." *Id.*

The Subdivision Ordinance also states that "[t]he protection of open space is a central feature of all PUD's." T.C.S.O. § 1–7–7. "In the case of an RCI PUD, a minimum of fifty percent (50%) of the land within the gross acreage of the PUD shall be dedicated to open space." *Id.* "Open spaces may take a variety of forms, including ... a golf course." *Id.*

The Subdivision Ordinance also expects that in a well-planned PUD, the housing units will be clustered in higher density groups allowing for open space. T.C.S.O. § 1–7–10. However, the Subdivision Ordinance does not provide a formula for clustering because a prescribed method for clustering would be counterproductive given the uniqueness of each development. *Id.* Rather, the Board of Commissioners is instructed to decide on projects based on how intelligently the project uses the existing land within the PUD. *Id.* The Subdivision Ordinance limits the base density of an RCI PUD, on that portion of the property that is not open

space, to a maximum of one unit per one-half acre. T.C.S.O. § 1–7–12A. Nonetheless, the Subdivision Ordinance allows the Board of Commissioners to approve a greater or lesser density, provided it determines the public health, safety, and welfare service of the county will not be negatively impacted. *Id.*

Based on the provisions of the Subdivision Ordinance and the Board of Commissioners' unique position in interpreting and applying its own zoning laws, the Teton Springs PUD does not violate the density requirements of Teton County's zoning laws. The PUD departs from the allowed lot size restrictions, but under the Subdivision Ordinance the Board of Commissioners has flexibility to approve such departures as long as it finds the departure does not compromise the health, safety and general welfare of the county. The Board of Commissioners specifically found no such compromise, as discussed above.

> **3. Approval of the Teton Springs PUD application is not dependent upon compliance with the policies of the Teton County Comprehensive Plan.**

The appellants assert that the Teton Springs PUD violates several important policies of the Comprehensive Plan. The respondents counter that the Comprehensive Plan is not a zoning ordinance that regulates project compliance.

The discussion in Part III.B above applies to this claim. While the Board of Commissioners may not disregard the Comprehensive Plan, it is not a zoning ordinance by which a development project's compliance is measured. Rather, the Comprehensive Plan provides guidance to the local agency charged with making zoning decisions. The appellants may or may not be correct in their concern that the Teton Springs PUD will adversely affect the present lifestyle and alter the character of the area in violation of the policies of the Comprehensive Plan, that point was heavily debated during the approval process. Similarly, the fear of the "Jacksonization" of the Teton Valley, as the billionaires force the millionaires over Teton Pass into Driggs and Victor, may be well founded.

However, regardless of the wisdom, or lack thereof, in approving Teton Springs' PUD application, the Comprehensive Plan does not provide a legal basis for this Court to reverse the Board of Commissioners' decision to approve the application.

> **D. The Teton Springs PUD does not violate the area of impact agreement between Teton County and the City of Victor.**

■ The appellants argue the PUD violates the Area of Impact Agreement (Agreement) between Teton County and the City of Victor. The agreement requires lots located in the Area of City Impact to be 2.5 acres, except developments located within 1500 feet of city limits may be divided into lots of one acre or larger. The appellants argue because the lot sizes in this PUD are much smaller than one acre, the county is in violation of an ordinance.

The Agreement is between Teton County and the city of Victor. On the issue of enforcement of the Agreement, it specifically states:

A. Teton County shall be responsible for the administration and enforcement of the Area of Impact within the unincorporated area in Teton County, Idaho. This shall not prevent the City from bringing enforcement proceedings in its own behalf if the County refuses to enforce these provisions after being requested to do so by the City.

B. . . . [R]equests for preliminary and final plats or the vacation thereof, and requests for zone changes involving property located in the Area of City Impact within the unincorporated area of Teton County relating to any non-agricultural development shall be reviewed and approved by both governing bodies upon recommendation from their respective Planning and Zoning Commission in accordance with Title 67 and Title 50, Idaho Code.

Ordinance # 94–1206, Area of Impact Agreement Between Teton County and the City of Victor, § 6A. The appellants are not entitled to seek enforcement of the Agreement because they are not a party to the Agreement

and not subject to it. The Agreement provides for enforcement only by Teton County or the city of Victor. Both the Board of Commissioners and the City Council of Victor approved the PUD application and zone change as required by the Agreement. Furthermore, the zoning district description of the Area of City Impact between Teton County and Victor allows for smaller lot sizes if part of an approved PUD. T.C.Z.O. § 1–3–5.

### E. The Findings Of Fact And Conclusions Issued By The Zoning Commission Are Adequate.

■ The appellants argue the record does not contain any written findings of fact and conclusions from the Board of Commissioners and, thus, violates I.C. § 67–6535. The appellants acknowledge the Board of Commissioners adopted the Zoning Commission's findings of fact and conclusions, but contend these findings of fact and conclusions are inadequate as a matter of law because they fail to acknowledge whether the zone change or PUD comply with the Zoning Ordinance, Subdivision Ordinance, or Comprehensive Plan.

The respondents counter that the Board of Commissioners' adoption of the findings of fact and conclusions as issued by the Zoning Commission is appropriate under I.C. § 67–6535. Additionally, the respondents argue the Board of Commissioners made findings of fact and conclusions to the relevant criteria for approving a zone change and the PUD application, as required by I.C. § 67–6535.

I.C. § 67–6535 governs the issuance of findings of fact or conclusions of law relevant to a local land use agency's approval or denial of a land use application. Approval or denial of a land use application must be in writing explaining the relevant criteria and standards, the relevant contested facts, and the rationale for the decision based on the applicable provisions of the comprehensive plan and relevant ordinances. I.C. § 67–6535(b). There is no requirement that both the Commission and Board make written findings and conclusions, only that they are made. The Board of Commissioners did not err by adopting the written findings of fact

and conclusions issued by the Zoning Commission.

I.C. § 67–6535(c) clearly states the legislature's intent that decisions made pursuant to LLUPA are to be based on reason and the practical application of recognized principles of law. Courts reviewing LLUPA decisions are to consider the proceedings as a whole and evaluate the adequacy of the procedures and resulting decisions in light of practical considerations. I.C. § 67–6535(c). The Zoning Ordinance requires that any zone change conform to the goals of the Comprehensive Plan, preserve compatibility with surrounding zoning districts, and secure public health, safety, and general public welfare. T.C.Z.O. § 1–3–6. The Subdivision Ordinance requires that, before accepting the concept plan of a PUD, the Commission consider the objectives of the Subdivision Ordinance; conformance to the Comprehensive Plan; availability of public services and the financial capability of the public to support the services; continuity with capital improvements, and other health, safety, or environmental problems. T.C.S.O. Art. III § B1. The Subdivision Ordinance also requires the Zoning Commission and/or Board of Commissioners to issue written findings, but does not require written findings where the public documents or records of the public meeting are already contained in the record. T.C.S.O. § 1–7–13(J).

Based on the totality of the record, the findings of fact and conclusions adopted by the Board of Commissioners satisfy the requirements of I.C. § 67–6535(b). The Findings of Fact and Conclusions address the applicable provisions of the Comprehensive Plan and Zoning Ordinance and how the zone change and PUD will comply with them. The Board of Commissioners concluded that the PUD conformed to the applicable ordinances based on the materials submitted by the developer, engineer, and Staff Reports on file. These materials included input by several public agencies on the impact of the development and matters Teton Springs needed to consider in order to comply with local, state and federal law. The record reflects that Teton Springs altered its PUD application according to this input in order to

satisfy the Zoning Commission and Board of Commissioners. The Board of Commissioners concluded the zone change satisfied the Comprehensive Plan based on the material submitted by the developer, engineer, and Staff Reports. The Board of Commissioners also concluded the zone change will preserve compatibility with the surrounding zoning districts and secure public health, safety, and general welfare based on the approval process as a whole.

While the Board of Commissioners would be better served by more specifically and extensively articulating its findings of fact and conclusions, the required information can be found in the record produced during the application process. This is in accord with I.C. § 67–6535(c), which requires a reviewing court to consider the whole process, and T.C.S.O. § 1–7–13(J), which does not require written findings where the public documents or records of the public meetings are already contained in the record. Therefore, we conclude the record, when viewed in its entirety, contains sufficient findings of fact to support the Board of Commissioners' decision.

### F. The Appellants Are Not Entitled To Attorney Fees On Appeal.

The appellants are not entitled to an award of attorney fees on appeal because they are not the prevailing party and have not shown the Board of Commissioners and Zoning Commission acted without a reasonable basis in fact or law.

### IV.

### CONCLUSION

The appellants have standing to challenge the Board of Commissioners' decision to approve the Teton Springs PUD. The Board of Commissioners' decision to grant the requested zone change and approval of the PUD does not violate the Teton County Subdivision and Zoning Ordinance or the Teton County Comprehensive Plan. The appellants are not entitled to seek enforcement of the Area of Impact Agreement between Teton County and the city of Victor. The Board of Commissioners' Findings of Fact and Conclusions, as adopted from the Zoning Commis-

sion, satisfy the requirements of I.C. § 67–6535. No attorney fees are awarded on appeal. Costs to the respondents.

Chief Justice TROUT, and Justices SCHROEDER, EISMANN, and Justice Pro Tem McLAUGHLIN concur.