IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37258

| | | |
|---|---|---|
| STEPHEN V. JASSO, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | Boise, June 2011 Term |
| v. | ) | |
| | ) | 2011 Opinion No. 107 |
| CAMAS COUNTY, IDAHO, a political | ) | |
| subdivision of the State of Idaho, | ) | Filed: November 2, 2011 |
| | ) | |
| Respondent-Appellant. | ) | Stephen Kenyon, Clerk |
| -------------------------------------------------------- | ) | |
| CURTIS and CAMIE GORRINGE, husband | ) | |
| and wife, | ) | |
| | ) | |
| Petitioners-Respondents. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAMAS COUNTY, IDAHO, a political | ) | |
| subdivision of the State of Idaho, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Camas County. Hon. Robert J. Elgee, District Judge.

The district court order vacating the Board's findings of fact and conclusions of law is <u>affirmed</u>. The district court's award of attorney fees is <u>reversed</u>.

Moore Smith Buxton & Turcke, Chtd., Boise, for appellant. Paul J. Fitzer argued.

The Roark Law Firm, Hailey, for respondent Jasso. James W. Phillips argued.

Benjamin W. Worst, P.C., Ketchum for respondents Gorringe. Benjamin W. Worst argued.

_____

HORTON, Justice.

This appeal arises from a petition for judicial review of the Camas County Board of Commissioners' (Board) decision to approve a preliminary subdivision plat. The district court held that the Board's findings of fact and conclusions of law did not amount to a reasoned

1

statement as required by I.C. § 67-6535 and that the lack of a reasoned statement violated the petitioners' substantial right to due process. The district court also held that the Board erroneously interpreted a number of Camas County Ordinances. The district court awarded attorney fees to petitioners. The Board timely appealed. We affirm the district court's order vacating the Board's findings and conclusions but we reverse the district court's award of attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Developer Patrick Dunn (Dunn) submitted an application to develop the Fricke Creek Subdivision (the subdivision) to the Camas County Planning and Zoning Commission (the Commission). The subdivision originally consisted of fifteen residential lots on an existing road, Fricke Creek Road. Fricke Creek Road was the only road in the subdivision, and it connected to a public road, Baseline Road, at its west end. Fricke Creek Road connects Dunn's property to Baseline Road via an easement that crosses parcels of real property owned by Stephen Jasso (Jasso) and Curtis and Camie Gorringe (Gorringes). Dunn's original proposal called for the eastern end of Fricke Creek Road to terminate in a loop that swept to the edge of the proposed subdivision near adjacent, undeveloped property.

The Commission held public hearings on Dunn's subdivision application, at which Jasso and the Gorringes expressed their concerns regarding the application. In particular, Jasso and the Gorringes raised three concerns: They contended, first, that the proposed subdivision lacked required access to a public road because the easement providing for ingress and egress to Dunn's property was private and could not be expanded to permit subdivision access; second, that lengthy Fricke Creek Road was a cul-de-sac street, because it was attached to another road at only one end and allowed for vehicles to turn around at its eastern terminus, and was therefore subject to a five-hundred foot length limitation imposed by a Camas County ordinance; and third, that the subdivision application was incomplete because it did not address flood mitigation, even though Fricke Creek ran through the proposed subdivision and was subject to periodic flooding.

The Commission initially recommended the Board deny the application because of the "quality of the easement" and the likelihood that Fricke Creek Road was an illegal cul-de-sac. The Board deliberated and remanded the application to the Commission, directing Dunn to modify the plat by changing Fricke Creek Road's terminus from a loop to a hammerhead

2

configuration. The hammerhead terminus would permit vehicles to turn around until Fricke Creek Road was extended to connect to another public road. Dunn modified the proposal as directed and the Commission held another public hearing. The Commission recommended the Board approve the amended subdivision application.

The Board issued findings of fact and conclusions of law approving the preliminary subdivision plat on several conditions, including that Fricke Creek Road (including that portion traversing the easement) be built to county specifications, that Fricke Creek Road terminate in a hammerhead terminus, and that the developer satisfy a provision of the Camas County Subdivision Ordinance (Subdivision Ordinance) that requires subdivisions to have access to a public street or road. The Board's findings and conclusions did not address the applicability of the floodplain provisions.

Jasso and the Gorringes petitioned for judicial review of the Board's decision, contending that the Board erred by approving the application and that the Board's findings and conclusions were insufficient to satisfy the requirements of I.C. § 67-6535. The district court granted Jasso's motion to bifurcate issues of law from issues of fact because the majority of the issues advanced by petitioners were questions of law which could be resolved without the expense of transcript production. The district court further held that the parties could later apply for an order for preparation of a transcript of the proceedings below. Following oral argument, the district court entered an order finding that Fricke Creek Road was a cul-de-sac and therefore, due to its length, violated the Camas County ordinance. The court also held that the Board's decision was arbitrary and capricious because its findings and conclusions were inadequate under I.C. § 67-6535 and violated Jasso's and the Gorringes' substantial right to due process. The court found Jasso and the Gorringes to be the prevailing parties, awarded them attorney fees, and ordered that the application be remanded to the Board for proceedings consistent with its order. The Board timely appealed.

## II. STANDARD OF REVIEW

Under the Local Land Use Planning Act, I.C. §§ 67-6501 *et seq*., one who is adversely affected by "[t]he approval, denial, or failure to act upon an application for a subdivision . . ." may seek judicial review by a district court. I.C. § 67-6521(1)(a)(i), (1)(d); I.R.C.P. 84.

The reviewing court must vacate and remand for further agency action if "the agency's findings, inferences, conclusions, or decisions are (a) in violation of constitutional or statutory

3

provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3). Remand is only appropriate if an error prejudiced the appellant's substantial rights. I.C. § 67-5279(4); *Vickers v. Lowe*, 150 Idaho 439, ___, 247 P.3d 666, 669 (2011).

An agency's findings of fact will stand if supported by substantial and competent, although conflicting, evidence in the record. *Terrazas v. Blaine Cnty.*, 147 Idaho 193, 196, 207 P.3d 169, 172 (2009). Conclusions of law are subject to free review, but there is a strong presumption in favor of a zoning board's interpretation of its own zoning ordinances. *Id.* As this is an appeal from a district court's decision, we review the district court's decision as a matter of procedure. *St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.,* 149 Idaho 584, 587, 237 P. 3d 1210, 1213 (2010).

## III. ANALYSIS

### A. The Board's written findings of fact and conclusions of law failed to satisfy the requirements of I.C. § 67-6535 and prejudiced Jasso's and the Gorringes' substantial right to due process.

Idaho Code § 67-6535(2) provides:

> The approval or denial of any application required or authorized pursuant to this chapter shall be in writing and accompanied by a reasoned statement that explains the criteria and standards considered relevant, states the relevant contested facts relied upon, and explains the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information contained in the record.

In order to satisfy I.C. § 67-6535, a local decision-maker must articulate in writing both (1) the facts found and conclusions reached and (2) the rationale underlying those findings and conclusions.

The requirement of meaningful administrative findings serves important functions, including "facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearing and judicial review and keeping within their jurisdiction." *Idaho Underground Water Users Ass'n v. Idaho Power Co.*, 89 Idaho 147, 156, 404 P.2d 859, 863 (1965) (quoting 2 Davis, *Administrative Law* § 16.05 (1958)).

4

We have repeatedly held local decision-makers to the standard set forth by I.C. § 67-6535. In *Crown Point Development, Inc. v. City of Sun Valley*, the purported findings of the city council were merely recitations of portions of the record, rather than determinations of the facts disputed by the parties. 144 Idaho 72, 77-78, 156 P.3d 573, 578-79 (2007). This Court found the "findings" to be inadequate. *Id.* In *Workman Family Partnership v. City of Twin Falls*, the city council's factual findings explained that a rezone application was denied because the rezone imposed "[t]oo great a change," would devalue nearby residential properties, and "would violate the integrity of existing residential zoning districts." 104 Idaho 32, 37, 655 P.2d 926, 931 (1982). We held that "[t]he reasons listed for the denial of the application . . . are basically conclusions. Nothing . . . reveals the underlying facts or policies that were considered by the Council. The reasons listed . . . provide very little insight into the Council's decision." 104 Idaho at 38, 655 P.2d at 932. In *Cooper v. Board of County Commissioners of Ada County*, the Court held that a board of county commissioners' findings and conclusions, supplemented by a staff report that stated some of the shortcomings for which the application was denied, were inadequate where the board denied the application "because of items 1, 2, 3 and 4 and Agricultural Policies No. 4 and No. 5 and also because of the school district." 101 Idaho 407, 408-09, 614 P.2d 947, 948-49 (1980). These cases demonstrate that the reasoned statement must plainly state the resolution of factual disputes, identify the evidence supporting that factual determination, and explain the basis for legal conclusions, including identification of the pertinent laws and/or regulations upon which the legal conclusions rest.

The Board relies on language found in I.C. § 67-6535(3)[1] and *Evans v. Teton County*, 139 Idaho 71, 73 P.3d 84 (2003), for the proposition that a reviewing court that assesses the adequacy of written findings and conclusions may overlook otherwise inadequate findings and conclusions if the record contains substantial, competent evidence to support the decision-maker's findings and conclusions. In *Evans*, this Court upheld as adequate a board of commissioners' findings and conclusions, stating "[w]hile the Board of Commissioners would be better served by more specifically and extensively articulating its findings of fact and conclusions, the required information can be found in the record produced during the application process." 139 Idaho at 80-81, 73 P.3d at 93-94. The findings and conclusions in *Evans* did not

---

[1] Idaho Code § 67-6535(3) states in part, "In reviewing such decisions, the courts of the state are directed to consider the proceedings as a whole and to evaluate the adequacy of procedures and resultant decisions in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision-making."

consist of mere bald conclusions, but rather addressed the applicable laws and explained the manner in which the approved zone change would comply with those laws. *Id.* at 80, 73 P.3d at 93. Thus, contrary to the Board's contention here, the findings and conclusions in *Evans* provided the reviewing court with the guidance necessary to review the record because they contained a reasoned explanation of the grounds upon which the board's decision was based.

In the present case, the Board's written findings of fact and conclusions of law consist of conclusory statements that are unsupported by any reasoned explanation of the grounds upon which they rely. As was the case in *Crown Point Development*, the Board's findings of fact merely recite portions of the record; they state that an application and several related reports were timely submitted, that expert and agency recommendations were made, that the appropriate fees were paid, and that hearings were held on specific days. These are recitations of the procedural history, not findings of fact.

The Board's conclusions of law contain no explanatory language whatsoever, instead offering only broad conclusions. Apart from the conditions of approval, the following is the entirety of the Board's legal conclusions:

> 1. The preliminary plat map meets the requirements of the Subdivision Ordinance for size and required number of maps.
> 2. The map contains all of the information required by the Subdivision Ordinance.
> 3. The preliminary plat application is complete as required by the Subdivision Ordinance.
> 4. The engineering report has been reviewed and is found to be complete and in compliance with the subdivision and zoning ordinances.
> 5. A copy of the warranty deed and easement agreement are in the file.
> 6. The subdivision is in compliance with the Comprehensive Plan, Zoning and Subdivision ordinances.
> 7. South Central District Health has concluded that the soil is suitable for the installation of septic systems, and is capable of satisfactorily treating septic tank effluent.
> 8. It is the conclusion of the Board of Commissioners that this subdivision meets all of the criteria set forth in the Subdivision Ordinance, Zoning Ordinance and Comprehensive Plan and is approved with the following conditions . . . .

While this statement is comprised of several legal conclusions,[2] it fails to "explain[] the rationale for the decision based upon the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information

---

[2] Clearly paragraphs 5 and 7 do not constitute legal conclusions.

contained in the record," as required by I.C. § 67-6535(2). To the contrary, these statements are as conclusory as those this Court dismissed as inadequate in *Workman Family Partnership*. Similar to the decision in that case, nothing in the Board's conclusions reveals that the Board considered any underlying specific fact or source of law. Unlike the findings and conclusions in *Evans*, the Board did not explicitly respond to the factual and legal questions raised by the parties, and it manifestly failed to provide an explanation as to how the plat application complied with Camas County ordinances. Indeed, the Board's decision is less informative than the decision that this Court held inadequate in *Cooper*, where the decision-maker cited specific policies and noted that additional studies were necessary before an application could be approved.

It may be inferred that the Board concluded that Fricke Creek Road is a stub street and not a cul-de-sac, that the Subdivision Ordinance does not limit the length of stub streets, that the proposed subdivision has access to a public road, and that the floodplain ordinances are inapplicable. However, I.C. § 67-6535 requires more than conclusory statements from which a decision-maker's resolution of disputed facts and legal reasoning may be inferred. It is not the role of the reviewing court to scour the record for evidence which may support the decision-maker's implied findings and legal conclusions.[3] To the contrary, the reviewing court's responsibility is not to evaluate the sufficiency of the evidence or the soundness of the legal principles upon which a decision *may* have rested; rather, the role of the reviewing court is to evaluate the process by which the decision was reached, considering whether substantial evidence supported the factual findings, and evaluate the soundness of the legal reasoning advanced in support of the decision.

Having concluded that the Board's decision does not meet the requirements of I.C. § 67-6535, we next consider whether this failure violated a substantial right. Jasso and the Gorringes assert that their right to due process was violated. We have held that "due process rights are substantial rights." *Eddins v. City of Lewiston*, 150 Idaho 30, ___, 244 P.3d 174, 180 (2010)

---

[3] The Board also contends there was error below because the district court did not review a transcript of the proceedings and the "absence of a transcribable verbatim record of . . . land use proceedings may result in a violation of a party's right to procedural due process." *Rural Kootenai Org., Inc. v. Bd. of Comm'rs*, 133 Idaho 833, 843, 993 P.2d 596, 606 (1999). However, the Board informed the district court that it was not opposed to the motion to bifurcate, which was made for the express purpose of avoiding the expense of producing a transcript. Further, the record on appeal indicates the Board did not lodge a request for production of a written transcript with the district court. "A litigant may not remain silent as to claimed error during a prior proceeding and later raise his objections for the first time on appeal." *Hoppe v. McDonald*, 103 Idaho 33, 35, 644 P.2d 355, 357 (1982).

(citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610 (1974)). The Board contends that Jasso and the Gorringes were not denied their due process rights because they participated fully in the proceedings below and therefore cannot be said to have lacked notice and an opportunity to be heard.

Clearly, notice and an opportunity to be heard are components of due process. They are not, however, the only requirements of due process. Due process also requires that parties be afforded a meaningful opportunity for judicial review. *Graves v. Cogswell*, 97 Idaho 716, 717, 552 P.2d 224, 225 (1976) ("It is clear in Idaho, however, that unless an appeal is provided from the decision of an administrative body to a court of law, due process has not been satisfied and is denied."). Idaho Code § 67-6535 gives effect to this component of due process. The "reasoned statement" of the statute requires that decision-makers articulate the basis for their decisions in such a fashion as to permit meaningful judicial review.

> If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely stated what it found to be the facts and fully explain why those facts lead it to the decision it makes. Brevity is not always a virtue.
>
> . . .
>
> We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. *What is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient.*

*Workman Family P'ship.*, 104 Idaho at 37, 655 P.2d at 931 (emphasis original) (citations and quotations removed).

We have recognized instances where procedural defects have not risen to the level of prejudice to a substantial right. *Terrazas*, 147 Idaho at 202, 207 P.3d at 178 (while commissioner's non-noticed and ex parte site visit violated due process, applicants failed to demonstrate prejudice to substantial right where parties and commissioners subsequently visited site together and record independently contained information acquired during ex parte visit); *Evans v. Bd. of Comm'rs of Cassia Cnty.,* 137 Idaho 428, 433, 50 P.3d 443, 448 (2002) (board's

8

non-noticed and ex parte site visit violated due process but did not prejudice a substantial right because the record contained independent evidence upon which board may have based its decision). However, these cases are readily distinguishable from the present case. The procedural defects in both *Terrazas* and *Evans* were relatively minor. The present case, by contrast, involves the Board's utter failure to provide a decision that facilitates judicial review. Due to the inadequacy of the Board's findings and conclusions, neither the district court nor this Court possesses the information necessary to meaningfully review the Board's approval of the preliminary plat application. We hold that the Board's failure to provide a reasoned statement for its decision prejudiced Jasso's and the Gorringes' substantial right to due process. We therefore affirm the district court's decision which vacated the Board's findings and conclusions and remanded the matter to the Board for further proceedings.

## B. Interpretation of the Subdivision Ordinance

Although not necessary to our decision today, we provide the following guidance on remand as to the provisions of the Subdivision Ordinance relevant to the parties' dispute.

1. If a land use application is submitted and proper access to the land is disputed, the decision-maker should make the application's approval expressly contingent upon judicial resolution of the access issue.

The parties dispute whether a "road and utility easement for ingress and egress" is sufficient in scope to permit public access to the proposed subdivision.[4] The Board correctly determined that it lacks jurisdiction to determine the easement's nature and scope, as questions of property ownership must be resolved by a district court. *Rural Kootenai Org., Inc. v. Bd. of Comm'rs*, 133 Idaho 833, 842, 993 P.2d 596, 605 (1999). Since article V, § B(1) of the Subdivision Ordinance requires that subdivisions with five or more lots have access to a public street or road, the Board may not approve the subdivision application until such access is certain. Thus, the Board may condition approval of the subdivision application upon a district court's entry of declaratory or final judgment that the easement provides the subdivision with the necessary access to a public road. *See McFadden v. Sein*, 139 Idaho 921, 923, 88 P.3d 740, 742 (2004) (affirming district court's judgment as to easement's scope after county commissioners

---

[4] Petitioners also assert that use of the easement to access a public road violates Subdivision Ordinance article IV, § C(9), which prohibits the existence of private streets within subdivisions. While the easement provides access to the proposed subdivision, it sits entirely outside of the subdivision, and therefore article IV, § C(9) is inapplicable according to its plain language.

9

made approval of conditional use permit expressly contingent upon judicial resolution of scope of the easement).

> 2. <u>The Board could properly conclude that Fricke Creek Road is not subject to the Subdivision Ordinance's length limitation on cul-de-sac streets.</u>

Based upon the arguments advanced on appeal, although the Board failed to say so in its written decision, we understand that the Board concluded that Fricke Creek Road would not be a cul-de-sac street under the Subdivision Ordinance. The Board could properly reach this conclusion.

The definitions section of the Subdivision Ordinance defines several types of streets. Art. II, § B. A cul-de-sac street is defined as "[a] street connected to another street at one end only and provided with a turn-around space at its terminus." *Id.* at § B(f). The definitions section does not provide a definition of a stub street. However, article IV, § C, titled "Design Standards – Location," states:

> Street and road location shall conform to the following:
>
> . . .
>
> 3. STUB STREETS: Where adjoining areas are not subdivided, the arrangement of streets in new subdivisions shall be such that said streets extend to the boundary line of the tract to make provisions for the future extension of said streets into adjacent areas. A reserve strip may be required and held in public ownership.
>
> . . .
>
> 7. CUL-DE-SAC-STREETS: Cul-de-sac streets shall not be more than five hundred (500) feet in length and shall terminate with an adequate turn-around having a minimum radius of seventy-five (75) feet for right of way.

The rules of statutory construction apply to the interpretation of local ordinances. *Evans*, 139 Idaho at 77, 73 P.3d at 90. If the language of an ordinance is unambiguous, the ordinance will be given its plain meaning. *Id.* "An ordinance is ambiguous where reasonable minds might differ or be uncertain as to its meaning. However, ambiguity is not present merely because the parties present differing interpretations to the court." *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 131, 176 P.3d 126, 136 (2007) (citations omitted). To determine legislative intent where the language of an ordinance is ambiguous, a court must construe all sections of the ordinance together such that no portion of the ordinance is rendered superfluous. *Evans*, 139 Idaho at 77, 73 P.3d at 90. Constructions that lead to absurd or unreasonably harsh

10

results are disfavored. *Id.* There is a presumption that a local zoning board's interpretation of its own zoning ordinance is valid. *Id.*

The district court found that because Fricke Creek Road was a street connected to another street at only one end and terminating with a turnaround, it was both a stub street and a cul-de-sac street that could be no longer than 500 feet. We disagree for three reasons. First, the separate design standards suggest that stub streets are distinguished from cul-de-sac streets. Second, the design standards' plain language describes the terminus of a cul-de-sac as "having a minimum radius . . . ." The word "radius" implies a circular or semi-circular shape. Since a hammerhead terminus is neither circular nor semi-circular, a stub street with a hammerhead terminus cannot be classified as a cul-de-sac street. Third, the nature of a stub street is inconsistent with the definition of a cul-de-sac street because a stub street is contemplated to be connected to another street at some point in the future. Imposition of the five-hundred-foot length limitation on stub streets would frustrate the objective of future connectivity.[5] Given the language of the ordinance, the Board could properly determine that the Subdivision Ordinance's length limitation on cul-de-sac streets does not apply to stub streets.

3. <u>The Subdivision Ordinance required the Board to determine whether the proposed subdivision sits within a floodplain, and if so, required Dunn to provide specific floodplain-related information.</u>

Jasso and the Gorringes contend that the Board failed to consider whether the proposed subdivision was located within a floodplain. There are two applicable provisions within the Subdivision Ordinance. Article II, § B defines floodplain as follows:

> The relatively flat area or low land adjoining the channel of a river, stream, lake or other body of water which has been or may be covered by water of a flood of one hundred year frequency. The flood plain includes the channel, floodway and floodway fringe, as established per the engineering practices as specified by the Army Corps of engineers [sic] . . .

Article VI, § G provides:

1. FLOOD AREAS: For any proposed subdivision that is located within a flood plain, the developer shall provide the Commission with a development plan of adequate scale and supporting documentation that will show and explain at least the following:
   a. Location of all planned improvements.

---

[5] We note that the district court's interpretation of the Subdivision Ordinance would create a disincentive for developers to construct stub streets with safety precautions in mind. This is so because the court's interpretation permits lengthy stub streets that do not end with a turnaround, but discourages construction of stub streets with termini that enable the turnaround of emergency vehicles.

b. The location of the floodway and the floodway fringe per engineering practices as specified by the Army corps [sic] of Engineers.

c. The location of the present water channel.

d. Any planned rerouting of waterways.

e. All major drainage ways.

f. Areas of frequent flooding.

g. Means of flood proofing buildings.

h. Means of insuring loans for improvements within the flood plain.

2. JUSTIFICATION FOR DEVELOPMENT: Upon the determination that buildings are planned within the flood plain or that alterations of any kind are anticipated within the flood plain area that will alter the flow of water, the developer shall demonstrate conclusively to the Commission that such development will not present a hazard to life, limb or property; will not have adverse effects on the safety, use or stability of a public way or drainage channel or the natural environment.

No subdivision or part thereof shall be approved if levees, fills, structures or other features within the proposed subdivision will individually or collectively significantly increase flood flows, heights, or damages. If only part of a proposed subdivision can be safely developed, the Board shall limit development to that part and shall require that development proceed consistent with that determination.

The Board contends that adoption of a regional floodplain map is a necessary condition precedent to applicability of the Subdivision Ordinance's floodplain provisions. The Board argues that, lacking such adoption, a two-hundred-foot setback from the mean high water mark is adequate. Jasso and the Gorringes counter that the lack of an authoritative map is irrelevant to whether the floodplain provisions of the Subdivision Ordinance apply. We agree. The plain language of the Subdivision Ordinance applies to all subdivisions that are located within a floodplain. The definition of floodplain contains no reference to a regional floodplain map and the application of Article VI, § G is not contingent upon the adoption of such a map. On remand, the Board must make a determination as to whether the proposed Subdivision sits within a floodplain and apply the appropriate Ordinance provisions.

## C. The district court's award of attorney fees must be reversed.

The Board appeals the district court's I.C. § 12-117 award of attorney fees to Jasso and the Gorringes. Jasso and the Gorringes also request an award of attorney fees on appeal, pursuant to I.C. § 12-117.

12

This Court's decision in *Smith v. Washington County*, 150 Idaho 388, 247 P.3d 615 (2010), is dispositive. In *Smith*, we noted that the plain language of the 2010 legislative amendment to I.C. § 12-117 distinguished "administrative proceedings" from "civil judicial proceedings," and thus empowered agencies to award attorney fees in administrative proceedings while limiting civil court awards of attorney fees to only those proceedings that originated with the filing of a civil complaint. *Id.* at ___, 247 P.3d at 618. "I.C. § 12–117(1) does not allow a court to award attorney fees in an appeal from an administrative decision." *Id.* Although the district court's decision predated the 2010 amendment, the legislature explicitly provided that the amendment would retroactively apply to all cases filed and pending as of June 1, 2009. This is such a case. Accordingly, we reverse the district court's award of attorney fees and deny Jasso's and the Gorringes' request for attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's order vacating the Board's findings of fact and conclusions of law. We reverse the district court's award of attorney fees to Jasso and the Gorringes. We award costs of appeal, but not attorney fees, to Jasso and the Gorringes.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.