IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38542

| | | |
|---|---|---|
| **RAYMOND SCOTT PECK,** | ) | **2012 Opinion No. 25** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: April 30, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO, DEPARTMENT OF TRANSPORTATION,** | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Steven C. Verby, District Judge.

Decision of the district court affirming administrative suspension of driver's license, <u>affirmed</u>.

Finney Finney & Finney, P.A.; John A. Finney, Sandpoint, for appellant. John A. Finney, argued.

Hon. Lawrence G. Wasden, Attorney General; Susan K. Servick, Special Deputy Attorney General, Coeur d'Alene, for respondent. Susan K. Servick, argued.

_____

GUTIERREZ, Judge

Raymond Scott Peck appeals from the district court's decision on judicial review affirming the administrative order of the Idaho Transportation Department suspending Peck's driver's license. Specifically, Peck asserts several procedural and evidentiary errors in regards to the administrative hearing. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

A police officer stopped Peck on December 2, 2009, for speeding in an area within the city limits of Sandpoint, Idaho. The officer detected an odor of alcohol and other signs of alcohol use upon contact with Peck. Peck refused to participate in field sobriety tests, and thereafter, the officer arrested Peck on suspicion of driving under the influence (DUI). At the police station, after a fifteen-minute observation period, the officer administered a breathalyzer

1

test to determine Peck's blood alcohol concentration (BAC test), which produced results of .089/xxx. Because of the invalid BAC test result on the second breath sample, Peck gave a second set of samples after another fifteen-minute observation period, producing results of .083/.086. Based on the second BAC test results showing a violation of Idaho Code § 18-8004, the officer issued Peck a notice of suspension of his driver's license and a temporary non-commercial driving permit. Peck was not operating a commercial vehicle at the time of the traffic stop, but held only a commercial driver's license (CDL). The CDL was seized pursuant to statute and as stated in the notice of suspension advisory form.

On December 8, 2009, Peck requested an administrative hearing on the proposed license suspension. The Idaho Transportation Department (ITD) issued two letters on December 15, 2009: one noticing a hearing for December 29, 2009, and the second showing cause to set the hearing date outside of the standard twenty days from the date of request due to a scheduling conflict with the hearing officer. On December 18, 2009, the ITD issued two additional letters: one noticing the date of the hearing for December 9, 2009,[1] and the second showing cause to set the hearing outside of the standard twenty-day period due to a change in the assigned hearing officer. The telephonic hearing was conducted on December 29, 2009, in which Peck and his attorney participated. Peck asserted primarily five arguments to challenge the suspension: (1) the hearing was not noticed or held according to statute; (2) he was not informed of the consequences of failing evidentiary testing for concentration of blood alcohol in accordance with due process; (3) the probable cause affidavit and test results supporting suspension facially lacked credibility; (4) the arresting officer lacked probable cause for the traffic stop; and (5) the BAC test results were not gathered in conformance with required testing procedures. The hearing officer rejected each of these arguments and sustained the suspension of Peck's license. Peck filed a petition for judicial review. Following briefing and oral argument, the district court affirmed the suspension. Thereafter, the district court allowed a rehearing on a motion to reconsider, but again affirmed. Peck timely appeals to this Court.

---

[1] This date was a clerical error in the letters and should have read December 29, 2009--the date originally noticed on December 15.

## II.

## DISCUSSION

The administrative license suspension (ALS) statute, Idaho Code § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of an ALS may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds by a preponderance of the evidence that the driver has shown one of several grounds enumerated in section 18-8002A(7) for vacating the suspension. Those grounds include:

(a)    The peace officer did not have legal cause to stop the person; or
(b)    The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
(c)    The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
(d)    The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the pace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or
(e)    The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

The Idaho Administrative Procedures Act (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.,* 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to

3

the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court, instead, defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine Cnty., ex rel. Bd. of Comm'rs,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in Idaho Code § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette Cnty. Bd. of Cnty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(2).

Peck reasserts his five challenges to the ITD's decision to suspend his driver's license: (1) the administrative hearing was not noticed or held according to statute; (2) Peck was not informed of the consequences of failing evidentiary testing for concentration of blood alcohol in accordance with due process; (3) the evidence used to support the license suspension was not credible; (4) the arresting officer lacked probable cause for the traffic stop; and (5) the BAC test results were not gathered in conformance with required testing procedures.

A.    **Procedural Challenges**

1.    **Notice and procedure of the hearing**

Peck asserts the administrating hearing was not noticed or held according to section 18-8002A(7) because of the clerical error in the notice and because the hearing took place more than twenty days after Peck's hearing request, without good cause shown for extending the hearing into the allowable ten-day extension period. However, section 67-5279(4) states the "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced."

4

Peck, and his attorney, participated in the hearing held on December 29, 2009, and had the opportunity to present Peck's challenges. Having participated in the hearing, Peck does not articulate how any substantial right was prejudiced. Additionally, in a challenge to a license suspension, it is Peck's burden to establish why a scheduling conflict or a change in hearing officer fails to show good cause for holding the hearing outside of the standard twenty-day period. Without having done so, the hearing date was within the time allowable under section 18-8002A(7). Therefore, no ground for reversal of the license suspension exists on this point.

### 2. Due process

Peck claims violations of due process because the notice of suspension advisory form received from the police officer did not inform him of the full range of consequences of failing an evidentiary test for concentration of blood alcohol.[2] Specifically, he asserts the advisory form did not contain information regarding a driver's disqualification from operating a commercial vehicle, Idaho Code § 49-335(2), which results from failing a BAC test.

Peck has framed his appeal as one from the suspension of his license under Title 18 of the Idaho Code. The Idaho Supreme Court has recently made clear that a license suspension under Title 18 of the Idaho Code and a disqualification from operating a commercial vehicle under Title 49 of the Idaho Code are two separate State actions. *Wanner v. Dep't of Transp.*, 150 Idaho 164, 168, 244 P.3d 1250, 1254 (2011) (holding appeal from license suspension pursuant to section 18-8002A did not relate to disqualification from operating a commercial vehicle). Title 49 contains provisions relating to notice of the agency's disqualification and the opportunity for an affected driver to request an administrative hearing, independent from any procedures afforded under Title 18. *Wanner*, 150 Idaho at 168, 244 P.3d at 1254. Because Peck's appeal is from a Title 18 license suspension and we have no record that Peck has requested or participated in a hearing to challenge a disqualification from operating a commercial vehicle under Title 49,

---

[2]     Peck does not distinguish whether his claim is a substantive due process or procedural due process argument. In regards to a license suspension, substantive due process means the reason for depriving a driver of a license cannot be arbitrary. *See In re McNeely*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct. App. 1990). A challenge to the license suspension procedures and advisory is a procedural due process claim. *See id.* Peck argues the latter, so we treat this as a procedural due process challenge. Peck also does not distinguish whether he argues a violation of the Due Process Clause of the United States Constitution or Idaho Constitution; however, the due process guarantees in each are substantially the same. *In re Gibbar*, 143 Idaho 937, 945, 155 P.3d 1176, 1184 (Ct. App. 2006).

we cannot conclude Peck has exhausted the procedures afforded to him relating to disqualification. Therefore, the CDL *disqualification* is not yet subject to judicial review.[3]

In regards to whether Peck was afforded procedural due process relating to his license *suspension* by the notice actually given, Peck does not argue the notice of suspension advisory form was ambiguous or did not completely advise him of his rights and duties under section 18-8002A. In fact, the advisory form specifically provided all information required by section 18-8002A and gave him notice of the license suspension and the procedures afforded to him to challenge it. Neither section 18-8002A nor due process requires an officer to inform a person subject to license suspension of the consequences regarding a separate disqualification under section 49-335(2). The notice of consequences contained in section 18-8002A (and reflected in the advisory form) is not deficient simply because it did not inform Peck of consequences under a different statute. *See Buell v. Idaho Dep't of Transp.*, 151 Idaho 257, 264, 254 P.3d 1253, 1260 (Ct. App. 2011) (holding a person with a CDL is presumed to have knowledge of the laws governing CDLs, and therefore, Buell "was presumed to know that the disqualification of his CDL was in addition to any suspensions he received under [Title 18]"); *Thompson v. State*, 138 Idaho 512, 516, 65 P.3d 534, 538 (Ct. App. 2003) (rejecting an argument that the police officer was obligated to give a driver advice regarding all consequences of taking a breath test, not just those delineated in section 18-8002A). Therefore, Peck's due process rights were not violated.

**B.      Evidentiary Challenges**

The next three of Peck's assertions are challenges to the evidence relied upon by the hearing officer to support the decision to suspend Peck's license. First, Peck takes issue with the officer's affidavit and BAC test results, arguing they facially lacked any credibility. Second, Peck contends the officer lacked probable cause for the traffic stop. Finally, Peck disputes the BAC test results, attempting to show that the results were not gathered in conformance with proper testing procedure.

---

[3]      Peck's appeal also does not fall within the "when the interests of justice so require" exception to allow judicial review even where administrative remedies have not been exhausted because the  procedures provided by Title 49 to challenge disqualification are not subject to a time limit for requesting a hearing. *See* I.C. § 49-326(4); *Wanner v. Dep't of Transp.*, 150 Idaho 164, 169-70, 244 P.3d 1250, 1255-56 (2011). Thus, Peck has not missed his opportunity to be heard before the agency.

This Court will not disturb the agency's conclusions on credibility and weight of the evidence unless they are clearly erroneous. *Painter v. Potlatch Corp.*, 138 Idaho 309, 312, 63 P.3d 435, 438 (2003). In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia,* 134 Idaho at 357, 2 P.3d at 742.

### 1.     Credibility of the affidavit and test results

Peck asserts the affidavit and BAC test results used to support the suspension are defective and lack credibility for three reasons: (1) the documents fail to identify the alleged acts as occurring in Idaho; (2) the test results have a variation of .005; and (3) the affidavit shows contradictory statements by the officer.

Peck asserts the evidence relied upon to sustain the suspension did not show that the ITD had authority to act because it failed to show the point of contact between Peck and law enforcement occurred in Idaho. The evidence before the ITD included the notice of suspension advisory form, evidentiary test results, the affidavit and sworn statement of the officer, and an order by a magistrate in the First Judicial District of the State of Idaho finding probable cause that a crime had been committed. The notice of suspension advisory form bore the emblem of the ITD and contained numerous references to the agency, indicating the license suspension was being executed pursuant to the ITD's authority. It also stated the arrest of Peck occurred in Bonner County. Even though the reference to Bonner County was not specified to exist in *Idaho*, it is common and reasonable to rely on the county name to determine the action took place within this state. *See* I.C. § 67-5251(1) (stating a hearing officer may admit evidence "if it is of a type commonly relied upon by prudent persons"). Moreover, the evidentiary test results each noted the tests were administered by the Sandpoint Police Department (located within Bonner County). Also, the affidavit of the arresting officer indicated by its heading that the police officer acted in Bonner County, in the State of Idaho. The ITD hearing officer's finding that the point of contact between Peck and the arresting officer occurred in Idaho was supported by substantial and competent evidence.

Next, Peck asserts the test results facially lacked credibility because of the variations in the test results. According to the Idaho State Police standard operating procedures for breath alcohol testing, a subject should generally only need to give two breath samples: a third is only

required if the results from the first two samples differ by more than .02. Idaho State Police, 6.0 Idaho Standard Operating Procedure: Breath Alcohol Testing, 6.2.2 (effective Nov. 1, 2010). The breath samples in this case produced results varying not more than .006 (using the .089 and .083 test results). With results falling within an acceptable range of valid results, we find no reason to conclude the breath test variations facially undermined the credibility of the results.

Finally, we address the statements in the affidavit by the arresting officer that Peck highlights to challenge the affidavit's use as evidence. Peck points to the fact that in the beginning narrative of the affidavit, the officer stated Peck refused field sobriety tests, but in the check boxes provided toward the bottom of the form, the officer indicated the field sobriety tests were failed. We note that on the affidavit form, there is no check box provided that would indicate a test was refused. Rather, the only options regarding field sobriety tests are either "Pass" or "Fail." While we suppose the officer could have left the boxes blank or written that the section was inapplicable because the tests were refused in order to be clearer, we find the notation by the officer only minimally contradicted his narrative found previously in the document. The hearing officer found that even if the affidavit "contains contrary statements as to whether Peck had performed or refused all three SFSTs [standardized field sobriety tests], . . . [the] narrative section is sufficient" to show legal cause to arrest Peck and to request an evidentiary test. Even disregarding the contrary statements about the field sobriety tests, the hearing officer found the weight of the evidence in the affidavit was sufficient to uphold a license suspension. This is supported by competent and substantial evidence in the record.

### 2. Probable cause for the traffic stop

Peck asserts the arresting officer lacked probable cause to stop Peck based on the 45 mph speed at which Peck was driving on highway U.S. 95 within Sandpoint city limits.[4] Peck argues that even though the posted speed limit was 35 mph, the posted sign did not control because it was posted contrary to Idaho statute. The State responds that it is undisputed that the posted speed limit was 35 mph and that Peck was driving 45 mph prior to the traffic stop. The State argues Peck's statutory argument is without merit.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v.*

---

[4]    Though it is never specifically stated, the record indicates the portion of the highway was within Sandpoint city limits.

8

*Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. In a license suspension challenge, the burden to present evidence affirmatively showing that an officer lacked legal cause for a traffic stop rests with the aggrieved driver. *Wheeler v. Idaho Transp. Dep't*, 148 Idaho 378, 382, 233 P.3d 761, 765 (Ct. App. 2009).

In support of his claim, Peck points to Idaho Code §§ 49-654(2) and 49-105(11) in an attempt to establish that the speed limit in the area Peck was driving prior to his arrest was greater than 35 mph. Peck argues section 49-654 provides specific circumstances where a speed limit upon a highway within city limits can be 35 mph and that the statute specifies the type of districts where these circumstances apply--namely, residential, business, and urban districts. He argues that, as those districts are defined in section 49-105(11), the area in which he was allegedly "speeding" was outside any of those defined districts and, therefore, not subject to a 35 mph speed limit. The State responds that the code sections Peck references are still guided by the general rule in Idaho Code § 49-207, which specifically allows cities to enact and enforce general ordinances prescribing additional requirements for the operation of vehicles upon highways within city limits. Therefore, the City of Sandpoint had the authority to make the area of the highway where Peck was driving subject to a 35 mph speed limit.

We review whether the posted speed limit was in accordance with statute because an officer's mistaken belief that a speed limit is lower than the speed limit provided by law is not

9

objectively reasonable and cannot support a reasonable and articulable suspicion to initiate a traffic stop. *State v. McCarthy*, 133 Idaho 119, 125, 982 P.2d 954, 960 (Ct. App. 1999). Whether the posted speed limit in this case was in accordance with the statutes requires interpreting a number of different sections of the Idaho Code. The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cnty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011).

Idaho's basic rule for maximum speed limits is contained within section 49-654, and provides in relevant part:

> (1) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hillcrest, when traveling upon any narrow or winding highway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.
>
> (2) Where no special hazard or condition exists that requires lower speed for compliance with subsection (1) of this section the limits as hereinafter authorized shall be maximum lawful speeds, and no person shall drive a vehicle at a speed in excess of the maximum limits:

10

(a) Thirty-five (35) miles per hour or a lesser maximum speed adopted pursuant to section 49-207(2)(a), Idaho Code, in any residential, business or urban district;

(b) Thirty-five (35) miles per hour in any urban district;

(c) Seventy-five (75) miles per hour on interstate highways;

(d) Sixty-five (65) miles per hour on state highways;

(e) Fifty-five (55) miles per hour in other locations unless otherwise posted up to a maximum of sixty-five (65) miles per hour.

Subsection (2)(a) allows for the adoption of a lower speed limit, if in accord with section 49-207(2)(a). The language there provides:

(2) Whenever local authorities in their respective jurisdictions . . . determine on the basis of an engineering or traffic investigation, and the residential, urban or business character of the neighborhood abutting the highway in a residential, business or urban district that the speed limit permitted under this title is greater than is reasonable and safe under the conditions found to exist upon a highway or part of a highway or because of the residential, urban or business character of the neighborhood abutting the highway in a residential, business or urban district, the local authority may determine and declare a reasonable and safe maximum limit which:

(a) Decreases the limit within a residential, business or urban district[.]

I.C. § 49-207(2). Residential, business, and urban districts are defined in section 49-105(11):

(a) Business district. The territory contiguous to and including a highway when within any six hundred (600) feet along the highway there are buildings in use for business or industrial purposes, including hotels, banks or office buildings, railroad stations and public buildings which occupy at least three hundred (300) feet of frontage on one side or three hundred (300) feet collectively on both sides of the highway.

(b) Residential district. The territory contiguous to and including a highway not comprising a business district when the property on the highway for a distance of three hundred (300) feet or more is in the main improved with residences, or residences and buildings in use for business.

(c) Urban district. The territory contiguous to and including any highway which is built up with structures devoted to business, industry or dwelling houses. For purposes of establishing speed limits in accordance with the provisions of section 49-654, Idaho Code, no state highway or any portion thereof lying within the boundaries of an urban district is subject to the limitations which otherwise apply to nonstate highways within an urban district. Provided, this subsection shall not limit the authority of the duly elected officials of an incorporated city acting as a local authority to decrease speed limits on state highways passing through any district within the incorporated city.

Peck urges that the stretch of the highway where he was driving prior to his arrest was not within any district defined in section 49-105(11) because there were no structures built up

11

along the highway in that area. The State contends whether the area fell within a defined business, residential, or urban district is irrelevant because the City of Sandpoint had the authority "to decrease speed limits on state highways passing through *any* district within the incorporated city." I.C. § 49-105(11) (emphasis added). Because the area was within Sandpoint's jurisdiction, the City could adopt a speed limit of 35 mph.

We agree. First, section 49-207(1) states, "These provisions of law shall not be construed to prevent cities from enacting and enforcing general ordinances prescribing additional requirements as to speed, manner of driving, or operating vehicles on any of the highways of such cities . . . ." Next, parsing out the language in the next subsection, the statute provides that a local authority in its respective jurisdiction may determine that "the speed limit permitted under this title is greater than is reasonable and safe under the conditions found to exist upon a highway or part of a highway." I.C. § 49-207(2). The local authority may also determine that the speed limit is greater than is reasonable under the conditions "because of the residential, urban or business character of the neighborhood abutting the highway" in one of those defined districts, I.C. § 49-207(2), but this finding is not required in addition to a finding based on the conditions upon a highway or part of a highway, as the statute uses the word "or." Any determination made under the authority in this section must be based upon "an engineering or traffic investigation, and the residential, urban or business character of the neighborhood abutting the highway in a residential, business or urban district." I.C. § 49-207(2). However, this language does not limit a city's authority to act upon any highway within its jurisdiction as further shown by subsections (a) and (b), which allow a local authority to "[d]ecrease[] the limit within a residential, business or urban district" and to "[d]ecrease[] the limit outside an urban district," respectively. I.C. § 49-207(2)(a),(b). Subsection (b) does not simply reiterate subsection (a), that a city has authority to lower a speed limit in a residential or business district, but rather provides authority to lower limits elsewhere within a city's jurisdiction. Were it otherwise, the language of subsection (b) would be of no effect. It is incumbent upon a court to give a statute an interpretation which will not render it a nullity. *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 605, 609, 261 P.3d 882, 886 (Ct. App. 2011). Finally, Idaho Code § 49-208 explains, "The provisions of this title shall not be deemed to prevent local authorities with respect to highways under their jurisdiction and within the reasonable exercise of the police power from: . . . (i) Altering or

12

establishing speed limits." Thus, the statutes, read in context with one another, do not support Peck's assertion.[5]

We conclude the hearing officer's finding that the arresting officer had legal cause for the traffic stop is not in error having determined that: (1) by statute, it was within the City's authority to lower the speed limit along that portion of the highway; (2) the posted speed limit was 35 mph; (3) Peck admitted to driving 45 mph in that area of the highway; and (4) there is no other evidence in the record establishing that the City acted contrary to its statutory authority.

### 3. Compliance with BAC test procedures

Lastly, Peck urges that the BAC test results were not gathered in compliance with procedures, specifically in regards to the fifteen-minute observation of a person required before administering a breath test. Peck asserts the officer's general statements of compliance with procedures in the affidavit are insufficient to support finding in the State's favor when compared to the specific, credible evidence Peck presented demonstrating a violation of proper procedure. The State argues that it was the hearing officer's function to weigh the evidence and determine, among conflicting evidence, which was more credible. The State asserts the hearing officer found the officer's affidavit to be more credible than Peck's testimony to the contrary.

Peck primarily relies on *Bennett v. Dep't of Transp.*, 147 Idaho 141, 206 P.3d 505 (Ct. App. 2009). In *Bennett*, this Court held that evidence before the hearing officer did not support a finding that the arresting officer complied with monitoring period procedures, and we upheld the district court's order vacating Bennett's license suspension. *Id.* at 145, 206 P.3d at 509. There, the evidence presented to the hearing officer included the officer's affidavit and the aggrieved driver's testimony. *Id.* at 143, 206 P.3d at 507. The affidavit was a computer-generated form and the only indication that the fifteen-minute observation procedure was complied with was a general statement saying, "The test(s) was/were performed in compliance with Section 18-8003 & 18-8004(4) Idaho Code and the standards and methods adopted by the Department of Law Enforcement." *Id.* Bennett's testimony contradicted this statement, as she testified that she was

---

[5] We also disagree with Peck's assertion that Idaho Code § 49-207(3) is the affirmative grant of power to local jurisdictions, but limits a city to act only within specified districts. Rather, section 49-207(3) outlines a duty and procedure for local authorities to act pursuant to the grant of power found in Title 50. *See* I.C. § 50-313 ("The city councils of cities shall have the care, supervision, and control of all public highways and bridges within the corporate limits . . . .").

13

coughing throughout the monitoring period and that the observing officer left the room twice during the observation period. *Id.* We concluded that the generic statement in the affidavit, when contradicted by specific and credible testimony that the observation period procedures were not complied with, was insufficient to support the hearing officer's conclusion that correct observation procedures were employed. *Id.* at 145, 206 P.3d at 509.

This case is distinguishable from *Bennett*. First and foremost, the officer in *Bennett* left the observation room on more than one occasion, whereas here, Peck acknowledges that the officer was present throughout both observation periods. It was the function of the hearing officer, then, to weigh both Peck's and the officer's account of events during the observation periods and determine the credibility of each. In addition to a very generic statement, nearly identical to the statement in the affidavit at issue in *Bennett*, the affidavit from the officer who arrested Peck and administered the breath tests also contained a narrative of the observations that took place. The officer specifically attested as follows:

> PECK was transported to the Sandpoint Police Dept., where I began the 15 minute monitoring period and read him the ALS suspension advisory in its entirety, and requested a breath sample which he provided. (.089/xxx) after not obtaining a second reading, the fifteen minutes of observation was started agin. [sic] following the second observation period, PECK again provided a breath sample (.083/.086) BrAC.

This account gives details of the breath testing consistent with most of Peck's account of the facts, short of an alleged belch. Peck testified that after the first fifteen-minute observation, which produced an invalid test result on the second breath sample, the second observation period was in fact commenced. Peck testified that during this second observation, he belched in the presence of the observing officer and that less than one minute after his alleged belch, the observing officer administered the second breathalyzer test.

The hearing officer, weighing Peck's testimony against the officer's affidavit and the credibility of each, found "it very doubtful that [the observing officer] would have ignored Peck tapping his chest, opening his mouth, and then belching prior [to] submitting to a breath sample." The hearing officer also concluded that the breath test results of .083/.086 taken at that time "strongly refute the possibility that any mouth alcohol from Peck's '**alleged**' belching had skewed [the test] results." (Emphasis in original.) Though the hearing officer did not use the words "credible" or "not credible," his findings display a credibility determination, based on any believability and probability that Peck's account was the accurate version of the facts. Due to

14

the specificity in the affidavit in this case and its significant overlap with Peck's account, *Bennett* is not determinative of this case, and the affidavit supports the hearing officer's finding that proper procedure was followed. We will not disrupt the credibility determinations.

**C.    Attorney Fees**

Peck states, "Notwithstanding the most recent rounds of appellate Court interpretation and legislative amendments to Idaho Code § 12-117, Peck seeks to maintain the possibility to recover attorney fees against the State of Idaho, Department of Transportation, pursuant to Idaho Code § 12-117 . . . ." This attorney fees statute pertaining to civil actions does not allow a court to award attorney fees on judicial review of an administrative decision. *St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.*, 150 Idaho 484, 490, 248 P.3d 735, 741 (2011). Consequently, no attorney fees may be awarded to either party.

## III.

## CONCLUSION

Peck has failed to meet his burden to establish a ground for reversing the ITD's decision to suspend his license. Therefore, we affirm the district court's decision upholding the suspension of Peck's driver's license.

Chief Judge GRATTON **CONCURS**.

Judge MELANSON **CONCURS IN THE RESULT.**